Filing # 230939729 E-Filed 09/05/2025 12:30:41 PM

IN THE CIRCUIT COURT OF THE FIFTEENTH JUDICIAL CIRCUIT IN AND FOR PALM BEACH COUNTY, FLORIDA.

JANE DOE, as Parent and Natural Guardian of   CASE NO:
J.D., a minor,

        Plaintiff,

vs.

THE SCHOOL BOARD OF PALM BEACH
COUNTY,

        Defendant.

_____/

## COMPLAINT

**COMES NOW**, Plaintiff, JANE DOE, as the parent and legal guardian of J.D., a minor, (hereinafter referred to as "J.D.") by and through the undersigned counsel, and hereby files this Complaint against Defendant, THE SCHOOL BOARD  OF PALM BEACH COUNTY, (hereinafter referred to as "SCHOOL BOARD"), and states as follows:

### JURISDICTION AND VENUE

1. This is an action for damages that exceed $50,000.00 exclusive of attorney's fees and costs and is otherwise within the jurisdiction of this Court.

2. At all times material hereto, Plaintiff JANE DOE was and is parent and natural guardian of J.D., a minor.

3. At all times material hereto, Plaintiff was and is a resident of Palm Beach County, Florida.

4. At all times material hereto, J.D., was a minor child who attended Tradewinds Middle School in the Palm Beach County School Board in Greenacres, Florida.

5.     At all times material hereto, Defendant SCHOOL BOARD is a governmental entity organized pursuant to the laws of the State of Florida, and has its principal place of business in West Palm Beach, County of Palm Beach, Florida.

6.     At all times material hereto, Defendant SCHOOL BOARD receives federal financial assistance and is subject to Title IX of the Educational Amendments of 1972.

7.     Venue is proper in Palm Beach County, Florida, because the conduct from which the claim arises occurred in Palm Beach County. Additionally, parties were residents of Palm Beach County, Florida and SCHOOL BOARD has its principal place of business in same.

## CONDITIONS PRECEDENT

8.     On or about October 15, 2024, Plaintiff JANE DOE as parent and natural guardian of J.D., a minor, provided written notice of this claim, via certified mail, and pursuant to section §768.28 of the Florida Statutes, to The SCHOOL BOARD of Palm Beach County, Florida Department of Education, and State of Florida Department of Financial Services.

9.     The Defendant is in possession of the notice letter described in paragraph 8 above. It is not appended hereto in order to protect the confidentiality of JANE DOE and J.D., a minor.

10.     The Department of Financial Services or the appropriate agency failed to make final disposition of the claim within six (6) months, which is deemed a final denial of the claim. All conditions precedent have been complied with or waived.

## GENERAL ALLEGATIONS

11.     Defendant SCHOOL BOARD is a public governmental entity operating as a SCHOOL BOARD serving students in Palm Beach County, Florida. SCHOOL BOARD is directed and operated by an elected SCHOOL BOARD who exercise control over SCHOOL

2

BOARD, who are in charge of setting the policies and guidelines for the SCHOOL BOARD, and who delegate to staff day-to-day responsibilities for operational matters.

12.      Defendant SCHOOL BOARD's elected SCHOOL BOARD exercises control over SCHOOL BOARD's Superintendent and school principals, who are in charge of its operations, staffing, hiring, discipline, creating and enforcing policies, school safety, screening new employees, and ensuring that its staff is not sexually abusing its students.

13.      Defendant SCHOOL BOARD's responsibilities include, but are not limited to, hiring, firing, supervising, transferring, suspending, disciplining, and directing the work of all school personnel (including substitute teacher, athletic coach, and school office assistant COREY NYQUAN PIERCE), and collaborating with the SCHOOL BOARD's officials, administrators, employees, agents, and representatives regarding same.

14.      Defendant SCHOOL BOARD is also responsible for creating and enforcing policies and procedures to keep children, like J.D. safe and protected from all forms of abuse by employees, like COREY NYQUAN PIERCE (hereinafter referred to as "PIERCE").

15.      In addition, Defendant SCHOOL BOARD has adopted rules and regulations for the SCHOOL BOARD, and has also created policies, procedures and bylaws by which SCHOOL BOARD is governed and is required to follow, including all applicable Florida Statutes and State Board Rules.

16.      Defendant SCHOOL BOARD is thus responsible for enforcing and ensuring compliance with federal and Florida law and its own rules, regulations, policies, and procedures, including those related to sexual and psychological abuse of students by employees.

3

17.     Further, SCHOOL BOARD's officers, administrators, teachers and other staff are all subject to mandatory governmental reporting requirements requiring that they report, investigate, and take action when they know or should have known that a child was being sexually abused.

18.     SCHOOL BOARD's Superintendent, principals and administrators are the administrative and supervisory heads of the SCHOOL BOARD's schools. Among other things, the Superintendent and principals (as well as the SCHOOL BOARD's teachers and other employees) are responsible for enforcing and ensuring compliance with federal and Florida law and the SCHOOL BOARD's rules, regulations, policies, and procedures, including those related to sexual and psychological abuse of students by employees. The Superintendent, principals, and administrators are also involved in the hiring, firing, transferring, and disciplining of staff, teachers, substitute teachers, and other employees at their schools.

19.     At all material times, each agent, employee, representative, official, administrator, and teacher of Defendant SCHOOL BOARD, including its board members, the Superintendent, the principals, the teachers, substitute teachers, and the School Police, were the authorized agents of the other and of Defendant SCHOOL BOARD, and each was acting within the course, scope, and authority of such agency. This includes substitute teacher and school office assistant PIERCE. Additionally, each of the foregoing individuals and entities, authorized, ratified, or affirmed each act or omission of each of the other foregoing individuals or entities.

20.     PIERCE was employed by SCHOOL BOARD as a substitute teacher beginning in January 2023 and as an Assistant School Office employee at Tradewinds Middle School beginning

4

in October 2023, and continued in those positions at all times material hereto until his resignation under suspicious circumstances on January 19, 2024[1].

21.     PIERCE was then rehired by SCHOOL BOARD as a substitute teacher on February 29, 2024, and continued in that position until his arrest on March 29, 2024. In those roles, he had access to and control over J.D., and numerous other students. Additionally, he was responsible for supervising and taking appropriate actions to protect J.D. and the other students at large.

## FACTS GIVING RISE TO THE CLAIMS

22.     At all times material, Plaintiff, J.D., was a minor enrolled student at Tradewinds Middle School in the SCHOOL BOARD.

23.     SCHOOL BOARD employed PIERCE as a substitute teacher from approximately January 2023, and as an Assistant School Office employee at Tradewinds Middle School from October 9, 2023, until his resignation on January 19, 2024.

24.     Despite his resignation, SCHOOL BOARD rehired PIERCE as a substitute teacher on February 29, 2024, and he continued in that position until his arrest on March 29, 2024.

25.     At all times material hereto, PIERCE was acting under the color of state law and acting with authority possessed by virtue of his employment as a substitute teacher and school office assistant at SCHOOL BOARD and pursuant to the power that he possessed by and through his employment at SCHOOL BOARD.

26.     Through his official duties as an employee of SCHOOL BOARD, PIERCE met, groomed, sexually assaulted, harassed and victimized J.D.—a minor under his supervision and control.

---

[1] SCHOOL BOARD has unlawfully withheld public records requests for the circumstances behind PIERCE's resignation at the time of this Complaint.

27.     PIERCE used his authority to harass, control and manipulate J.D. at Tradewinds Middle School and beyond. Many of the acts of improper unlawful and abusive conduct occurred at Tradewinds Middle School during normal business hours when neither PIERCE nor J.D. was being properly supervised, and the conduct occurred with such frequency and under such open and obvious circumstances that even minimal supervision would have detected its occurrence.

28.     While employed at SCHOOL BOARD, PIERCE was directed by the SCHOOL BOARD to supervise and assist with the education of minor children. Consequently, PIERCE met student, J.D., when she was only twelve (12) years old and in 7th grade during the 2023-24 school year.

29.     J.D. was under PIERCE's direct supervision and control.

30.     PIERCE was enabled in accomplishing his psychological and sexual abuse/assault of JANE DOE by the existence of his employee/employer relationship with SCHOOL BOARD.

31.     Beginning in September 2023, PIERCE began the process of "grooming" J.D. by initiating contact with her through Instagram direct messages. PIERCE then escalated to daily texting and FaceTime calls, showing sympathy and encouragement to J.D., offering to serve as her mentor, and arranging secret meetings both during and after school.

32.     Despite being fully aware that the SCHOOL BOARD's employee policies prohibited inappropriate communications and fraternizing with students, PIERCE initiated prohibited communications via Instagram, text messages, and phone calls with J.D. to discuss non-school related topics, and did so both during school hours and evenings. PIERCE also convinced J.D. to allow him to track her location on her cell phone, giving him unprecedented control and access to this vulnerable child.

6

33.    By October 2023, PIERCE had gained J.D.'s trust and began using his position of authority to pressure her into sexual acts. He would text J.D. during class, instructing her to tell her teacher she needed to use the bathroom, and instead meet him in empty classrooms, particularly classroom 2-110B, which was adjacent to science teacher Lionel Willis's classroom.

34.    In October 2023, during one of these orchestrated meetings in classroom 2-110B, PIERCE first physically touched J.D. inappropriately by grabbing and kissing her.

35.    When J.D. appeared scared, PIERCE told her she shouldn't be scared, continuing his psychological manipulation of this vulnerable 12-year-old child.

36.    By the end of October of 2023, PIERCE had successfully manipulated J.D. into engaging in sexual intercourse with him in school classroom 2-110B. This was J.D.'s first sexual experience, and she was only 12 years old.

37.    PIERCE did not use any protection during these encounters and would later purchase Plan B contraceptive pills for J.D. after intercourse.

38.    From October 2023 through March 2024, PIERCE systematically and repeatedly sexually assaulted J.D. with encounters occurring "every other day" during the peak period. These sexual assaults occurred primarily in two school classrooms: Building 1, Room 129, and Building 2, Room 110B.

39.    PIERCE gained access to these empty classrooms through his position with the SCHOOL BOARD and through teacher Lionel Willis, who would allow PIERCE unfettered entry into classroom 2-110B – notably a classroom upon which PIERCE had no classes and/or otherwise no purpose in being there.

40.    PIERCE would regularly remove J.D. from her classes under false pretenses, telling her to say she needed to use the bathroom or creating other reasons to be alone with her.

7

41.    Her teachers failed to question her extended absences or whereabouts when she returned to class.

42.    In addition to the on-campus sexual assaults, PIERCE also took J.D. off school property in his personal vehicle, a red Dodge Charger, where he would sexually assault her in various locations throughout Palm Beach County, including parking lots and secluded areas. PIERCE would arrange these meetings by telling J.D. to tell her mother she was "going for a walk," and he would pick her up near her house.

43.    During this period, PIERCE engaged in a pattern of psychological manipulation and control over J.D. He would buy food for her, give her gifts, monitor her social media activity, and use his authority as a school employee to maintain control over her movements and communications.

44.    Teacher Lionel Willis, whose classroom was adjacent to classroom 2-110B where many of the sexual assaults occurred, was aware of PIERCE's concerning behavior around female students.

45.    Lionel Willis later admitted that he had specifically cautioned PIERCE about his behavior, telling him "as guys, you don't want the little girls around you to hang around like that."

46.    Despite this warning and his awareness of concerning behavior, Lionel Willis failed to report PIERCE to school administration as required by mandatory reporting laws and SCHOOL BOARD policy.

47.    Lionel Willis also admitted that he regularly provided PIERCE access to classroom 2-110B, and that PIERCE used this room "maybe 8 times total".

48.    Multiple school employees observed PIERCE's excessive attention to female students and his pattern of being alone with students in inappropriate circumstances, yet failed to

8

properly investigate, report, or intervene to protect J.D. and other students, whom he also sexually molested.

49.     By January 19, 2024, PIERCE's concerning behavior had reached a level that resulted in his resignation from his position as Assistant School Office at Tradewinds Middle School.

50.     However, rather than investigating the circumstances of his resignation or ensuring he could not continue to access students, SCHOOL BOARD inexplicably rehired PIERCE as a substitute teacher on February 29, 2024.

51.     This rehiring was particularly egregious because it occurred despite the SCHOOL BOARD's awareness of previous concerns about PIERCE's conduct. The rehiring allowed PIERCE continued access to students throughout the SCHOOL BOARD, including continued access to J.D., whom he continued to sexually assault until just days before his arrest.

52.     Even after PIERCE was no longer employed full-time at Tradewinds Middle School, he continued to sexually assault J.D. through March 24, 2024, just five days before his arrest on March 29, 2024. The final sexual assault occurred after SCHOOL BOARD had rehired him as a substitute teacher, demonstrating how the SCHOOL BOARD's negligent rehiring decision directly enabled the continuation of J.D.'s abuse.

53.     On March 27, 2024, two 12-year-old students at Woodlands Middle School reported that PIERCE had contacted them inappropriately on TikTok and had engaged in sexual contact with at least one of them in a portable classroom. This investigation led to PIERCE's arrest on March 29, 2024, at Dr. Joaquin Garcia High School.

54.     Upon PIERCE's arrest, law enforcement discovered evidence of his systematic abuse of multiple students, with J.D. being one of at least 27 total cases being investigated.

9

PIERCE was charged with multiple counts of unlawful sexual activity with a minor and sexual battery.

55.    SCHOOL BOARD's own Title IX investigation, concluded on April 11, 2025, found "clear and convincing evidence of inappropriate behavior on behalf of Corey Pierce in which he violated SCHOOL BOARD Policy 3.191 prohibiting Gender-Based Discrimination and Harassment under Title IX."

56.    This finding confirms that PIERCE's conduct violated SCHOOL BOARD policy and that the SCHOOL BOARD maintained a hostile educational environment.

57.    When J.D. was first interviewed by SCHOOL BOARD Police Detective Martha Lopez on April 3, 2024, the interview was conducted in a traumatic and unprofessional manner that caused additional psychological harm to J.D.  Detective Lopez conducted the interview without proper protocols, without a counselor present, and in a manner that was insensitive and inappropriate for a 13-year-old victim of sexual abuse.

58.    During this interview, Detective Lopez peppered J.D. with explicit and graphic questions, laughed about PIERCE having "a type" when discussing the 27 potential victims, callously informed J.D. about potential STD exposure without providing resources or support, and ultimately told J.D. she would have to tell her mother herself that she needed STD testing. No counseling services were offered or arranged for J.D. after this traumatic interview.

59.    SCHOOL BOARD's handling of J.D.'s disclosure demonstrated a complete disregard for her psychological wellbeing and constituted institutional betrayal that compounded her trauma from the months of sexual abuse.

60.    SCHOOL BOARD knew or should have known that PIERCE was not fit for service as a school employee and that he never should have been permitted to be around children. PIERCE

had concerning behavior patterns that were observable to multiple employees, yet SCHOOL BOARD failed to properly investigate, failed to take corrective action, and ultimately made the catastrophic decision to rehire him after his resignation, directly enabling the continuation of his abuse of J.D. and multiple other students.

61.     As a result of the Defendants' actions, J.D. was sexually assaulted multiple times over a six-month period and suffered serious and permanent physical and psychological injuries. Additionally, her constitutional rights were violated including those afforded to her under the Fourth and Fourteenth Amendment.

## COUNT I – NEGLIGENT HIRING, TRAINING, SUPERVISION AND RETENTION

62.     Plaintiffs reallege and incorporate the allegations contained in paragraphs 1 through 61 above, as though fully stated herein, and further allege:

63.     Defendant, SCHOOL BOARD, owed a legal duty to select as employees only those fit for service, to supervise employees, and to provide necessary and appropriate discipline, training, and retraining.

64.     It was unreasonable for SCHOOL BOARD to initially hire PIERCE, continue to employ him, and then rehire him after his resignation, in light of what it knew or should have known and/or learned through proper investigation and supervision.

65.     During the course of PIERCE's employment, SCHOOL BOARD became aware or should have become aware of problems with PIERCE that indicated his unfitness for service and/or the need for discipline and training. SCHOOL BOARD had both actual and constructive notice of PIERCE's inappropriate conduct with students, including his pattern of isolating female students and engaging in concerning behaviors that were specifically brought to the attention of school employees like Lionel Willis.

66.     Despite teacher Willis's warnings to PIERCE about his behavior with female students, and despite Willis's provision of access to empty classrooms that PIERCE used to sexually assault students, SCHOOL BOARD failed to receive reports of this concerning behavior because Willis and other employees failed to follow mandatory reporting requirements.

67.     SCHOOL BOARD breached its duty by failing to take the necessary action to prevent PIERCE from victimizing and injuring Plaintiff J.D.. Despite knowledge or constructive knowledge of PIERCE's inappropriate behavior patterns, SCHOOL BOARD continued to employ PIERCE and then made the egregious decision to rehire him after his resignation, which put him in continued positions of authority over students, including J.D.

68.     Most egregiously, after PIERCE resigned from his position at Tradewinds Middle School on January 19, 2024, SCHOOL BOARD made the unconscionable decision to rehire him as a substitute teacher on February 29, 2024. This rehiring occurred without adequate investigation into the circumstances of his resignation and allowed PIERCE continued access to students throughout the SCHOOL BOARD, directly enabling his continued abuse of J.D. and facilitating his access to additional victims at other schools.

69.     SCHOOL BOARD breached its duty by failing to provide adequate training to its employees, including PIERCE, other teachers, administrators, and support staff regarding appropriate boundaries with students, signs of grooming and predatory behavior, mandatory reporting requirements, and proper protocols for protecting students from abuse.

70.     SCHOOL BOARD also breached its duty by failing to provide appropriate training regarding the signs of sexual abuse, how and when to report suspicious behavior, and other appropriate actions to keep students like J.D. safe. This failure in training directly contributed to the systemic failure to protect J.D. from months of repeated sexual abuse.

71.   At all times material, SCHOOL BOARD is responsible for maintaining and ensuring the safety of its school premises and ensuring that its students are not victimized by employees that it hires, retains, and rehires.

72.   SCHOOL BOARD has a duty to supervise its employees and students and to protect its students from abuse by employees. The SCHOOL BOARD failed to provide adequate supervision of PIERCE, allowing him unsupervised access to students in empty classrooms and failing to monitor his interactions with female students despite clear warning signs.

73.   The type of harm inflicted on plaintiff J.D. was reasonably foreseeable to occur, based on PIERCE's observable behavior patterns, the warnings given to him by other employees, and the abundance of unsupervised time that PIERCE was allowed to spend in isolated environments with individual students. The sexual assaults occurred in school facilities during school hours when proper supervision would have prevented them.

74.   The conduct described above constitutes negligence by SCHOOL BOARD, for its failure to adequately hire, train, supervise, and retain employees; its failure to protect J.D. from abuse by PIERCE in his official capacity as a SCHOOL BOARD employee; its failure to properly investigate concerning behavior; and its unconscionable decision to rehire PIERCE after his resignation, directly enabling continued abuse.

75.   Because of SCHOOL BOARD's negligent hiring, training, supervision, and retention, Plaintiff J.D. has sustained permanent injuries and damages.

76.   As a direct result of SCHOOL BOARD's negligence, plaintiff J.D. was subjected to serious and permanent injuries. J.D. has suffered bodily injury and resulting pain and suffering, disability, disfigurement, mental anguish, loss of the capacity for the enjoyment of life, embarrassment, humiliation, medical and nursing care and treatment, educational disruption, and

loss of normal childhood development. The losses are permanent and/or continuing in nature and J.D. will continue to suffer losses in the future.

**WHEREFORE**, Plaintiff, JANE DOE, as the parent and legal guardian of J.D., a minor, demands judgment against Defendant SCHOOL BOARD for damages exceeding $50,000.00, demands taxable costs, and further demands trial by jury on all issues so triable.

## COUNT II: 42 U.S.C. § 1983 DEPRIVATION OF PLAINTIFF'S CIVIL RIGHTS

77.     Plaintiff reallege and incorporate the allegations contained in paragraphs 1 through 61 above, as if though stated herein, and further alleges:

78.     At all times material hereto, Defendant SCHOOL BOARD was responsible for the public SCHOOL BOARD, its agents and employees, including hiring, supervising, enforcing policies, overseeing, training and establishing policies, customs, and procedures to conform the conduct of its agents and employees to law.

79.     At all times material, SCHOOL BOARD and PIERCE were acting under the color of state law and PIERCE was acting with authority possessed by virtue of his employment as a substitute teacher and school office assistant at SCHOOL BOARD and pursuant to the power that he possessed by and through his employment at SCHOOL BOARD. Through his official duties as an employee of SCHOOL BOARD, PIERCE met, groomed, sexually assaulted, harassed and victimized J.D.—a minor under his supervision and control. PIERCE used his authority to harass, control and manipulate J.D. at Tradewinds Middle School and beyond.

80.     SCHOOL BOARD's policies, procedures, customs, and practices of condoning unlawful and/or improper sexually abusive acts (as evidenced by multiple prior claims and lawsuits against SCHOOL BOARD) and ignoring repeated and blatant violations of school policies by their

employees (including PIERCE) meant to protect students, like J.D., were direct causes and/or moving force leading to the violations of J.D.'s civil rights, including but not limited to allowing employees to isolate students in empty classrooms, failing to adequately supervise employee interactions with students, allowing inappropriate communications between employees and students, and rehiring employees who had resigned under concerning circumstances.

81.     Further, SCHOOL BOARD's failure to identify, train, discipline, or otherwise properly supervise employees (including PIERCE) who have engaged in inappropriate acts, misconduct, and/or the above-mentioned violations directly caused and/or contributed to the violations of J.D.'s civil rights, including but not limited to her rights under the Fourth and Fourteenth Amendment, right to body integrity, and right to personal safety.

82.     SCHOOL BOARD knew of a need to train and supervise its employees in certain areas and made a deliberate and conscious choice not to take action, including but not limited to appropriate boundaries with students, identifying predatory behavior, mandatory reporting requirements, proper supervision protocols, and response to concerning behavior patterns. Despite knowing of these training deficits, SCHOOL BOARD acted in a deliberately indifferent manner by failing to take appropriate action and/or protect its students, like J.D. and the other students that PIERCE sexually abused.

83.     SCHOOL BOARD displayed deliberate indifference to the rights of plaintiff J.D., as secured by the Fourth and Fourteenth Amendments, by allowing PIERCE to continue to possess his authority despite observable concerning behavior patterns, by failing to adequately investigate his conduct, and most egregiously, by rehiring him after his resignation, directly enabling continued abuse.

15

84.     Significantly, SCHOOL BOARD's decision to rehire PIERCE after his resignation on January 19, 2024, was made with knowledge or constructive knowledge of concerning circumstances of inappropriate student conduct surrounding his initial departure, yet the SCHOOL BOARD failed to conduct adequate investigation before placing him back in positions of authority over students. This decision was made with deliberate indifference to the safety and constitutional rights of students like J.D.

85.     SCHOOL BOARD and its administrators had final policy making authority and were charged with enforcing existing policies. SCHOOL BOARD and its administrators acted with deliberate indifference to the rights of J.D. and the other students sexually assaulted in the SCHOOL BOARD and/or permitted, condoned and engaged in practices that were so persistent and widespread as to constitute a custom.

86.     SCHOOL BOARD had custody of J.D. which created a special relationship, including while J.D. was on campus and during school activities. As a result of this special relationship and while SCHOOL BOARD's custody, J.D. was groomed, harassed, victimized and sexually assaulted.

87.     Further, through these actions and inactions, SCHOOL BOARD created and/or increased the danger for J.D. and its other students at large, and its failure to protect J.D. directly resulted in her injuries, including being repeatedly sexually assaulted. SCHOOL BOARD's actions, particularly the decision to rehire PIERCE, were egregious and would shock the conscience of any reasonable person.

88.     As a direct and proximate result of the violation of J.D.'s civil rights, J.D. was subjected to serious and permanent injuries. J.D. has suffered bodily injury and resulting pain and suffering, disability, disfigurement, mental anguish, loss of the capacity for the enjoyment of life,

embarrassment, humiliation, medical and nursing care and treatment, educational disruption, and loss of normal childhood development. The losses are permanent and/or continuing in nature and J.D. will continue to suffer losses in the future.

89.     Plaintiff, JANE DOE, as the parent and legal guardian of J.D., a minor, has retained the undersigned attorneys to prosecute this action on her behalf and has agreed to pay them a reasonable fee and to reimburse the costs of this action.

**WHEREFORE**, JANE DOE, as the parent and legal guardian of J.D., a minor, demands judgment against SCHOOL BOARD for compensatory damages, costs, interest, reasonable attorneys' fees pursuant to 42 U.S.C. §1983, § 1988 and such other and further relief as the court deems appropriate. Plaintiff further demands trial by jury.

### COUNT III: VIOLATION OF TITLE IX OF THE EDUCATIONAL AMENDMENTS OF 1972, 20 U.S.C. § 1681

90.     Plaintiffs realleges and incorporate the allegations contained in paragraphs 1 through 61 above, as if fully set forth herein, and further alleges:

91.     As a student at Tradewinds Middle School, J.D. had the right not to be subjected to sex discrimination, including sexual abuse, molestation, exploitation, and harassment. Plaintiff JANE DOE also had a substantive due process right to, and liberty interest in, her bodily integrity.

92.     At all relevant times, Defendant SCHOOL BOARD had a duty to provide a safe and nondiscriminatory environment for its students, free from sexual harassment and sexual violence, and to resolve reports or complaints of sexual misconduct promptly, equitably, and adequately.

93.     By October 2023, Defendant SCHOOL BOARD had actual or constructive notice that PIERCE was engaging in inappropriate behavior with female students, including J.D..

SCHOOL BOARD employees, including teacher Lionel Willis, were aware that PIERCE was spending inappropriate amounts of time with female students and engaging in behavior that warranted warnings and cautions.

94.     This notice alerted and informed SCHOOL BOARD that PIERCE had the propensity to sexually abuse, victimize and/or harass female students and, therefore, posed a serious danger to female students throughout the SCHOOL BOARD, including J.D.

95.     SCHOOL BOARD, its administrators and employees had a duty to promptly and adequately report and investigate PIERCE's conduct and safeguard its students from the risk of sexual harassment, sexual abuse, and exploitation by PIERCE, pursuant to federal and Florida law and its own rules, regulations, policies, and procedures.

96.     Each of Defendant SCHOOL BOARD's officials, administrators, agents, and employees who observed or became aware of PIERCE's inappropriate behavior with female students, including teacher Lionel Willis, principals, and other staff members, had the authority and duty to initiate corrective action to investigate, report, and/or supervise PIERCE so as to prevent the risk he posed to female students in general and the plaintiff in particular.

97.     Defendant SCHOOL BOARD failed to take appropriate action to either investigate, report, or appropriately supervise PIERCE. At all relevant times, Defendant SCHOOL BOARD failed to conduct a prompt, impartial, reasonable, reliable, and thorough investigation of the concerning behaviors observed by its employees.

98.     Most egregiously, Defendant SCHOOL BOARD's decision to rehire PIERCE as a substitute teacher on February 29, 2024, after his resignation from Tradewinds Middle School on January 19, 2024, demonstrated deliberate indifference to the safety of its students and a complete failure to follow appropriate protocols for investigating and addressing employee conduct issues.

99.     At all relevant times, Defendant SCHOOL BOARD also failed to establish and institute sufficient corrective measures to safeguard its students from the risk of sexual abuse, molestation, and exploitation by PIERCE. This includes, but is not limited to: (i) SCHOOL BOARD's failure to sufficiently limit, restrict, supervise, and monitor PIERCE's behavior, communications, interactions, and relations with female students (including J.D.); (ii) SCHOOL BOARD's failure to take precautions that were sufficient to prevent sexual predation upon J.D.by PIERCE; (iii) SCHOOL BOARD's willingness to allow PIERCE to frequently be alone with students in unsupervised environments; and (iv) SCHOOL BOARD's failure to abide by Federal and Florida law and to establish, implement, and abide by sufficient rules, regulations, policies, and procedures with regard to reporting, investigating, documenting, and redressing psychological and sexual misconduct and abuse.

100.    At all relevant times, Defendant SCHOOL BOARD was deliberately indifferent to the known dangerous sexual and predatory propensities PIERCE posed to J.D. and the other students he sexually assaulted. Defendant SCHOOL BOARD's decision to rehire PIERCE demonstrated knowing and deliberate exposure of its students, including J.D., to a substantially increased risk of sexual abuse, exploitation, and harassment.

101.    Despite knowledge or constructive knowledge of PIERCE's concerning behavior patterns and inappropriate interactions with female students, Defendant SCHOOL BOARD continued to allow him access to students and then, most egregiously, rehired him as a substitute teacher, making an official decision to ignore the known danger to students under Defendant's care.

102.    The SCHOOL BOARD's own Title IX investigation finding of "clear and convincing evidence" that PIERCE violated SCHOOL BOARD Policy 3.191 prohibiting Gender-

19

Based Discrimination and Harassment confirms that the SCHOOL BOARD maintained a hostile educational environment and failed in its Title IX obligations to J.D.

103.    As a result of Defendant SCHOOL BOARD's gross failures to adequately respond to warning signs and its deliberate indifference demonstrated through rehiring PIERCE, J.D. was repeatedly sexually abused and harassed by PIERCE over a six-month period.

104.    As a further result, Plaintiff JANE DOE has suffered, and continues to suffer, substantial injuries, harm, and damages. J.D. suffered has suffered bodily injury and resulting pain and suffering, disability, disfigurement, mental anguish, loss of the capacity for the enjoyment of life, embarrassment, humiliation, medical and nursing care and treatment, educational disruption, and loss of normal childhood development, severe and permanent emotional, psychological, and physical injuries, post-traumatic stress disorder, depression, anxiety, inability to function normally in social situations, shame, humiliation, and the inability to enjoy a normal childhood and adolescence. Such harms and injuries are continuing and permanent.

**WHEREFORE**, Plaintiff JANE DOE, as the parent and legal guardian of J.D., a minor demands compensatory damages in excess of $50,000.00, attorneys' fees and costs under 42 U.S.C. § 1988, pre- and post-judgment interest, a trial by jury and such other relief as this Court deems just and proper.

## JURY TRIAL DEMANDED ON ALL COUNTS

DATED this 5th day of September, 2025.

/s/ *Matthew K. Schwencke*

Matthew K. Schwencke
Florida Bar No.: 057132
Primary E-Mail: schwencketeam@searcylaw.com
Searcy Denney Scarola Barnhart & Shipley, PA
2139 Palm Beach Lakes Boulevard
West Palm Beach, FL 33409
Phone: (561) 686-6300
Fax:    (561) 383-9456
*Attorney for Plaintiff*

21